UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LACEY L. RAMIREZ )<br>)<br>  Plaintiff, )<br>)<br> vs. )<br>)<br>CITY OF FREDERICKTOWN, )<br>MISSOURI )<br>)<br>  Defendant. ) | Case No. 1:13-cv-2 SNLJ |

## MEMORANDUM AND ORDER

Plaintiff Lacey Ramirez filed this lawsuit against the City of Fredericktown, Missouri, alleging that she had been harassed, retaliated against, wrongfully discharged, and otherwise discriminated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  The City has filed a motion to dismiss (#14) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The matter has been fully briefed and is now ripe for disposition.

**I.  Background**

For purposes of the motion to dismiss, the Court accepts as true plaintiffs' allegations. Plaintiff was employed by the City as a patrolman from July 2009 through January 2, 2011.  On the evening of December 12, 2010, she was contacted by the then-Mayor of the City via text message on her mobile phone.  They had the following text-message exchange:

> *9:33 p.m.*
> Mayor : You did a great job today. Thank you. Mayor Tripp
>
> Plaintiff: Thank you Mayor Tripp
>
> Mayor: How's everything going for you?

Plaintiff: Pretty good. Today was kind of hectic but we worked it out ok. And you?
Mayor: CRAZYNESS...Its calming down now. I wanted to chat with you, but didn't see ya around anymore

*9:45 p.m.*
Plaintiff: I ended up getting a call for an alarm sounding so I did not get to stay long unfortunately.

Mayor: Dang police calls. lol.

Plaintiff: Yes but that is okay by me because calls like that are usually the easiest ones.  lol ;-)

Mayor Trip: How late will you be up tonight?

Plaintiff: Awhile I guess probably 11 or so

Mayor: Can I text you later tonight K

*10:22 p.m.*
Mayor: I'm back... Lets play a game. Ill ask a question then you ask a question. And  so on.... Wanna play? By the way I'm NOT your boss right now. Just a friend.

*10:57 p.m.*
Mayor: YES or NO???

*10:28 p.m.*
Mayor: Go out and look up at the moon. Theres a huge ring. It only happens every 500 yrs.

*11:48 p.m.*
Mayor:  You sleeping?

Plaintiff alleges that she knew of other women who had received similarly-themed text messages from the Mayor, and his invitation to play a "game" of twenty questions with those women

resulted in text messages that were sexual in nature.  As a result, plaintiff ceased responding to the Mayor's text messages.

At a police department meeting in early December 2010, Mayor Tripp pointed out to plaintiff that he was her boss because the police captain had resigned.  Sometime after that meeting, Mayor Tripp asked to speak with plaintiff privately.  Then he asked plaintiff to end her relationship with a male employee of the Madison County Sheriff's office.  Sergeant Nettles, who was then the current senior office at the police department, was also present for that meeting.

A few days after the private meeting, plaintiff reported to Sergeant Nettles the text messages she had received from Mayor Tripp. She also told Nettles about the sexually explicit messages the Mayor had recently sent to other women.  Nettles told plaintiff that he would follow protocol and handle the situation.

Plaintiff alleges that Nettles failed to investigate the Mayor and that, instead, he "increased his differential treatment of Plaintiff on account of her sex."  He also "increased his sexual harassment and retaliated against Plaintiff for reporting Mayor Tripp's behavior," which plaintiff states was a protective activity.

Plaintiff alleges that Nettles had always treated plaintiff "with a chauvinistic and inappropriate attitude."  He once yelled inside the department, with respect to women in general, "if they don't fuck me, feed me, or call me Daddy, then I don't care about them."  As to Nettles's increased discriminatory treatment, plaintiff alleges that her actions on duty were heavily scrutinized while other male officers who had not reported sexual harassment were not.  Among plaintiff's scrutinized activities were personal cell phone use, conversing with City residents on patrol, and organization of the evidence locker.  Nettles also followed plaintiff around as she

3

responded to calls at night, while Nettles himself was off-duty and accompanied by his girlfriend. Nettles also purposefully failed to respond to dispatches in an effort to make plaintiff's workload more difficult. Nettles and the Mayor also inquired about and demanded termination of plaintiff's relationship with a member of the Madison County Sheriff's department, but male police department employees were not questioned about or told to end their own similar relationships.

The Fredericktown Police Department terminated plaintiff on January 3, 2011 "for conduct unbecoming an officer and substandard work." Plaintiff states that she had received an award for exemplary police work just two weeks before Mayor Tripp text-messaged her, and she alleges the Mayor and Nettles fabricated complaints about her allegedly substandard work. She filed her amended complaint on January 16, 2013, and claims that (Count I) defendant's agents sexually harassed her, (Count II) defendant's agents intentionally discriminated against her based on her sex, and (Count III) defendant retaliated against her because she objected to the sexual harassment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

**II.     Legal Standard**

Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A complaint must be dismissed for failure to state a claim if it does not plead enough facts to state a claim to relief that is plausible

4

on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) (abrogating the traditional "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A petitioner need not provide specific facts to support his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56 & n.3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Twombly*, 550 U.S. at 555 (internal citations omitted). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). Finally, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).

### III. Discussion

Defendant seeks dismissal of all three Counts.  Each is discussed below.

### A. Count I – Sexual Harassment

To plead hostile work environment harassment, "plaintiff must establish that (1) she is in a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of plaintiff's employment, and (5) the defendant knew or should have known of the harassment and failed to take proper remedial action." *Williamson v. Arvin Indus., Inc.*, 975 F. Supp. 1235, 1238 (E.D. Mo. 1997) (citing *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir.1997)).

Defendant contends that Count 1 should be dismissed because (1) plaintiff failed to plead facts sufficient to establish that the City knew of or should have known about the harassment, and (2) because she failed to plead facts that establish a hostile work environment.

#### 1. Defendant's knowledge of the harassment

Defendant contends that plaintiff failed to report inappropriate behavior to the City of Fredericktown, and thus that plaintiff did not establish the fifth element above, that "defendant knew or should have known of the harassment."  Plaintiff points out that she told the "current senior officer at the Fredericktown Police Department, Sergeant Nettles," about Tripp's text messages, and that, furthermore, the City's Mayor had knowledge of the harassment because he was the perpetrator.  Because the Mayor had knowledge, so did the City. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 789-90 (1998).  In *Faragher*, the Supreme Court observed that an employer was charged with notice where the "individual charged with creating the abusive atmosphere" was "within that class of an employer organization's officials who may be treated as

6

the organization's proxy." *Id.* at 789.  In particular, a "supervisor may hold a sufficiently high position 'in the management hierarchy of the company for his actions to be imputed automatically to the employer.'" *Id.* (quoting *Torres v. Pisano*, 116 F.3d 625, 634-35 & n.11 (2d Cir. 1997)).

Here, plaintiff alleges that she complained to her Sergeant, who was the highest-ranking member of the City police department, about the text messages and about his harassment of her on patrol.  She alleges that Nettles himself harassed and scrutinized her and said offensive things, and she alleges that the Mayor himself sent the text messages.  Further, plaintiff alleges that the Mayor held himself out to be plaintiff's boss.  There can be no real dispute over whether the City knew about the alleged harassment.

## 2. Hostile Work Environment Allegations

Next defendant contends that plaintiff's allegations of Mayor Tripp's text messages and Sergeant Nettles's offensive comment are not sufficient to establish a hostile work environment.  Indeed, "the Supreme Court has repeatedly reiterated that actionable sexual harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 548 (8th Cir. 2008) (internal quotations and modifications omitted).  "This is a high bar, and it requires a showing that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  However, "whether a work environment is so hostile or abusive as to alter the terms and conditions of employment is to be judged in light of all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

7

whether it unreasonably interferes with an employee's work performance.'" *Brannum*, 518 F.3d at 548 (quoting *Harris*, 510 U.S. at 23).

Plaintiff alleges more than the text messages and Nettles's offensive comment.  She alleges that Nettles heavily scrutinized her work, followed her around at night while she responded to calls, purposefully failed to respond to many dispatches when he was on duty, inquired about her relationship with another law enforcement officer, and demanded that she end that relationship.

Again, in considering the Motion to Dismiss, the Court accepts as true the allegations in the complaint. Standing alone, any one of plaintiff's allegations would be unlikely to sustain a hostile work environment claim.  However, when viewed in the aggregate, as this Court must do, plaintiff's allegations are adequate. *See id.*  Plaintiff indicates that Nettles's offensive conduct was frequent, that his night "stalking" was intimidating and threatening, that his inquiries about her relationship were humiliating, and that his behavior (including his failure to respond to calls while they were both on duty) created a hostile work environment that affected the conditions of her employment.  The Motion to Dismiss will be denied as to Count I.

**B.     Count II — Intentional Discrimination**

Count II alleges that defendant discriminated against plaintiff by discharging her because of a relationship with a member of the sheriff's department, evaluating her more negatively because of her sex, disciplining her more stringently because of her sex, researching and analyzing her personal affairs more closely because of her sex, and discharging her because of her sex. (Cmplt. ¶¶ 40-41.)

Defendant contends that plaintiff failed to exhaust her administrative remedies with respect to her discrimination claim, and that, as a result, Count II should be dismissed.  "A Title

VII complainant may raise claims in court 'like or related' to the substance of the complainant's charge before the EEOC." *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 741 (8th Cir. 1980). Plaintiff's charge before the EEOC states that (1) Mayor Tripp sent her inappropriate text messages, she complained about them to her superiors, and no action was taken; (2) she was terminated for alleged conduct unbecoming an officer, substandard work, and personal conduct, but that other "similarly situated individuals, who are male and who have not complained about inappropriate behavior, have violated the same or similar policy, but have not been terminated"; and (3) for the above reasons, she believes she has been discriminated against because of her sex and in retaliation for complaining of inappropriate behavior in violation of Title VII.

Defendant argues that plaintiff's Count II is not "like or related to" the charges brought before the EEOC. Plaintiff maintains that her EEOC complaint was sufficiently detailed because she says her EEOC complaint "describes being examined and evaluated under a different standard than male officers." Presumably, plaintiff refers to her EEOC complaint's statement that male officers "violated the same or similar [unidentified] policy, but have not been terminated." Ultimately, plaintiff's EEOC complaint alleges that she was retaliated against for reporting harassing text messages and that she was fired despite that male officers had violated the same policy and had not been fired. Plaintiff's complaint alleges that she was evaluated and disciplined differently from male coworkers.

The Courts "do not require that subsequently-filed lawsuits mirror the administrative charges." *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on different grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011); *see also Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998) ("A Title VII plaintiff must file a charge of discrimination with the EEOC before bringing a civil suit, but the scope of the

9

subsequent action is not necessarily limited to the specific allegations in the charge."). "However, the sweep of any subsequent judicial complaint may be only as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." *Duncan*, 371 F.3d at 1025 (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988) and *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985)) (internal quotation marks and modifications omitted).  Here, had plaintiff only charged retaliation to the EEOC, then her complaint's Count II would not be "like or related to" her EEOC charges. *See, e.g.*, *Duncan*, 371 F.3d at 1025 ("It is well-settled that charges of sexual harassment generally are not like or reasonably related to retaliation charges for complaining about antecedent harassment.").  But plaintiff does — albeit briefly — charge sex discrimination in her EEOC complaint, both in the last sentence of her charge ("I have been discriminated against because of my sex") and in stating that male colleagues had not endured the same treatment.  In addition, this Court is mindful that it should, "when appropriate, construe civil-rights and discrimination claims charitably." *Id.*

Plaintiff exhausted her administrative remedies.  As a result, the Motion to Dismiss as to Count II will be denied.

    **C.**    **Count III — Retaliation**

Defendant contends that plaintiff fails to state a claim for retaliation.  To establish unlawful retaliation in violation of Title VII, plaintiff must show that she engaged in a statutorily protected activity, that the City took adverse action against her, and that the adverse action was causally related to her involvement in the related activity. *Brannum v. Missouri Dept. of Corrections*, 518 F.3d 542, 547 (8th Cir. 2008).  Although plaintiff need not show that the conduct she opposed was in fact prohibited under Title VII, she must show that "she had a good faith, reasonable belief that the underlying challenged conduct violated Title VII." *Id.* (quoting

10

*Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007)) (internal quotations omitted and alterations adopted).

Here, plaintiff claims that her protected activity was complaining to Nettles about Mayor Tripp's text messages.  In order for that complaint to be a "protected activity," plaintiff must have had a reasonable belief that Mayor Tripp's text messages violated her rights under Title VII.  Plaintiff argues that the mere rejection of a colleague or supervisor's unwanted sexual advances is a "protected activity" within the meaning of Title VII.  Although it is true that the Eighth Circuit held that an employee who told her supervisor to stop his offensive behavior had engaged in protected activity in *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000), the supervisor in question had made overt, repeated sexual advances toward that plaintiff.  The situation here is quite different. Plaintiff alleges that Mayor Tripp sent her text messages over the course of one evening, and, although it is easy to see why plaintiff thought the messages were inappropriate, the text messages are not so objectively offensive as to trigger Title VII.  The precedent is clear on this issue.  The Supreme Court has squarely rejected retaliation claims that were premised on an employee's contention that she was punished by her employer for objecting to a single sexually offensive remark made by her supervisor.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001).  In that case, the employee complained about a single sexually suggestive remark made in her presence by a supervisor, and she alleges that the employer retaliated against her for complaining.  The Supreme Court held that it was "at worst an 'isolated incident' that [could not] remotely be considered 'extremely serious,' as our cases require."  *Id.* (citing *Faragher*, 524 U.S. at 788).  As a result, "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard."  *Id.*  The Court is bound to reach the same conclusion here, where plaintiff complained of no more than a short series of

11

tame, but perhaps inappropriately friendly, text messages that may or may not have lead to sexually explicit communications. Because plaintiff could not have reasonably believed that the incident itself was a violation of Title VII, plaintiff's retaliation claim fails.

## IV. Conclusion

The defendant's motion to dismiss will be granted as to Count III only. The motion to dismiss is denied as to Counts I and II.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (#13) is **DENIED in part** and **GRANTED in part**.

**IT IS FURTHER ORDERED** that plaintiff's Count III is dismissed.

Dated this __13th__ day of May, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE